IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **B GSE GROUP, LLC,** | ) | Case No. 23-30013 |
| | ) | |
| Debtor. | ) | |

## MOTION TO USE CASH COLLATERAL

B GSE Group, LLC, the above-captioned debtor and debtor in possession (the "Debtor"), by this motion (the "Motion"), respectfully requests entry of an interim order authorizing the use of cash collateral pursuant to sections 105, 361, and 363 under Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure. In support of this Motion, the Debtor states as follows:

### JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are sections 105, 361, and 363 of the Bankruptcy Code and Bankruptcy Rule 4001.

### BACKGROUND

2. Formed in North Carolina on October 3, 2011, the Debtor engineers and manufactures ground support equipment for commercial and military aircraft. The company's products include ground power units, air units, fueling equipment, underground service pits, and hose systems. Its clients include airports, airlines, the United States armed forces, as well as airplane and aviation manufacturers.

3. The Debtor employs 27 workers. While its principal office is located in Huntersville, North Carolina, the company maintains fabrication and assembly facilities in Morgantown, West Virginia.

4. The Debtor's assets primarily consist of equipment, machinery, tooling, inventory, production contracts, and accounts receivable.

5. On January 6, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 (Subchapter V) of the United States Bankruptcy Code in this Court. The Debtor continues in possession of its properties and the management of its business as a debtor in possession pursuant to section 1182 of the Bankruptcy Code.

6. Upon information and belief, Truist Bank ("Truist") holds a first priority lien on the Debtor's accounts and general intangibles, and a second priority lien on all other assets of the company. Upon further information and belief, the Debtor is indebted to Truist in the amount of approximately $2,487,567.61 pursuant to a revolving line of credit and a term equipment loan.

7. Upon information and belief, the United States Small Business Administration also holds a blanket lien on the Debtor's personal property (junior only to Truist with respect to accounts and general intangibles), securing an indebtedness of $500,000.00.

8. No other parties hold valid, consensual liens in the Debtor's assets.[1]

9. Due to the emergency nature of the Debtor's bankruptcy filing, counsel has not yet had an opportunity to fully review in detail all of the promissory notes, security agreements, financing statements, assignments, and other documents memorializing the lender's asserted claims. For purposes of this Motion, the Debtor relies upon a presumption that the referenced

---

[1] Upon information and belief, certain "merchant lenders" may contend they hold subordinate liens in the Debtor's property. However, any such claims are invalid and do not constitute legitimate security interests.

liens are properly perfected as to substantially all property of the Debtor. The Debtor reserves the right to challenge the validity of any asserted liens at a later date.

## RELIEF REQUESTED

10. Pursuant to this Motion, the Debtor seeks authority to use cash collateral as defined in 11 U.S.C. § 363(a) on an interim basis, to operate in the ordinary course of business. The Debtor proposes to use cash collateral in accordance with a formal budget (the "Budget"), prepared by the Debtor, which is attached hereto as **Exhibit A**, and which assumes the accrual of ordinary course business and bankruptcy related expenses necessary to fund the Debtor's operations going forward. Because the amount and timing of all expenses cannot be predicted exactly, the Debtor proposes that it be considered in compliance with the Budget so long as it does not exceed the Budget by more than 10% per line item (on a cumulative basis).

11. The Debtor requests a preliminary hearing on an emergency basis to approve this interim request pursuant to Bankruptcy Rule 4001(b)(2) and that a final hearing be set at least 14 days after the filing of this motion.

## BASIS FOR RELIEF REQUESTED

12. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor in possession may not use cash collateral without consent of the secured party or court approval. 11 U.S.C. § 363(c)(2). After notice and a hearing, the Court may approve a debtor's use of cash collateral without the secured creditor's consent, "to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b).

13. In order for a court to authorize the use of cash collateral over a secured party's objection, the secured party's interest in the cash collateral must be adequately protected. In the context of a cash collateral motion, the purpose of adequate protection is to protect the secured

lender from a diminution in the value of its collateral during the period in which it is prevented from foreclosing by the automatic stay. *In re Delta Resources, Inc.*, 54 F.3d 722, 728-30 (11th Cir. 1995).

14. Courts have found a secured creditor adequately protected where either a sufficient equity cushion in the collateral exists to protect the secured creditor, or the level of the secured creditor's collateral is not decreasing over time. *In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (secured creditor was adequately protected and debtor was authorized to use cash collateral where level of collateral was not declining); *In re May*, 169 B.R. 462 (Bankr. S.D. Ga. 1994) (equity cushion in property may provide creditor with adequate protection of its interest, sufficient to permit the debtor to use cash collateral).

15. The Debtor's lenders are adequately protected against any diminution in value of their pre-petition collateral in this case. Preliminarily, the use of cash collateral in the ordinary course of business, in and of itself, provides adequate protection as it preserves the going concern value of the Debtor's business and, as a result, the value of its assets. Additionally, the value of the Debtor's accounts receivable as of the Petition Date (without reference to any other property of the estate or third-party collateral pledged to Truist) exceeds $3.7 million.[2] This equates to a 21% equity cushion. *See Kost v. First Interstate Bank of Greybull (In re Kost)*, 102 B.R. 829, 831-32 (D. Wyo. 1989) ("Case law has almost uniformly held that an equity cushion of 20% or more constitutes adequate protection."); *In re Snead*, 2008 Bankr. LEXIS 1160, *2-3 (Bankr. E.D.N.C. Apr. 1, 2008) (noting same); *FinanceAmerica Corp. v. Johnson (In re Johnson)*, 45 B.R. 618 (Bankr. D. Md. 1985) (finding 18.7% equity cushion provided adequate protection).

---

[2] Member-manager Bryan Bullerdick pledged additional, non-Debtor collateral security for Truist's indebtedness.

16. As an additional means of adequate protection, the Debtor also proposes to provide Truist and the SBA with replacement liens in post-petition receivables to the same extent and priority as existed pre-petition, for all cash collateral actually expended during the duration of the interim order.

17. The Debtor's cash flow and other financial analysis show that the lenders' collateral position will be adequately maintained during the Debtor's use of cash collateral, especially given the presence of a substantial equity cushion and the short term period covered by the interim order herein requested. Thus, the Debtor submits that its use of cash collateral is proper pursuant to section 363(c)(2) of the Bankruptcy Code.

18. The Debtor will suffer immediate and irreparable harm without the interim relief requested. In the absence of a court order authorizing the use of cash collateral, the Debtor cannot meet its operating expenses and will be unable to operate. This, in turn, will leave the company unable to reorganize in order to maximize value for the bankruptcy estate and its creditors.

19. The value of the Debtor's assets will deteriorate rapidly if the company is not permitted access to cash collateral. As a result, the Debtor's ability to fashion an effective plan to satisfy secured, priority, and other claims will be irreparably impaired.

20. Therefore, the Debtor requests that the Court grant it interim authority to use cash collateral in accordance with the Budget until a further hearing on the motion can be scheduled pursuant to Bankruptcy Rule 4001.

21. A proposed order granting the relief requested herein is attached as **Exhibit B**.

## NOTICE

22.    The Debtor has given notice of this Motion to (a) the Bankruptcy Administrator for the Western District of North Carolina, (b) the Subchapter V trustee, (c) the Debtor's twenty largest unsecured creditors, (d) Truist; (e) the SBA; and (f) those parties requesting notice pursuant to Bankruptcy Rule 2002.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the court grant the relief requested herein and such other relief as is just and proper.

Dated: Charlotte, North Carolina
January 9, 2023

**MOON WRIGHT & HOUSTON, PLLC**

*/s/ Richard S. Wright*
Richard S. Wright (Bar No. 24622)
Caleb Brown (Bar No. 41131)
212 North McDowell Street, Suite 200
Charlotte, North Carolina 28204
Telephone:  (704) 944-6560
Facsimile:   (704) 944-0380
*Counsel for the Debtor*