UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| In re:<br><br>**B GSE GROUP, LLC,**<br><br>Debtor. | Chapter 11<br><br>Case No. 23-30013 |

### CREDITOR JOHN BEAN TECHNOLOGIES CORPORATION'S MOTION FOR ENTRY OF ORDER FOR LIMITED RELIEF FROM THE AUTOMATIC STAY TO FINALIZE LITIGATION PENDING IN THE UNITED STATE DISTRICT COURT FOR THE DISTRICT OF UTAH

Creditor John Bean Technologies Corporation ("JBT"), through its undersigned counsel, files this *Motion for Entry of an Order for Limited Relief From the Automatic Stay to Finalize Litigation Pending in the United States District Court for the District of Utah* (the "Motion"), seeking entry of an Order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), pursuant to 11 U.S.C. § 362(d) to complete briefing on post-trial motions that were pending at the time of the bankruptcy filing and obtain rulings in the United States District Court for the District of Utah, Central Division captioned *John Bean Technologies Corporation v. B GSE Group, LLC and Bryan Bullerdick*, Case No. 1:17-cv-00142-RJS-DAO, (the "Federal Court Lawsuit"). In support of the Motion, JBT respectfully states as follows:

### I. JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Western District of North Carolina (the "Court") has jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The predicates for relief are, as applicable, 11 U.S.C. §§ 105 and 362, Rule 4001(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 4001-1 of the Local Bankruptcy Rules for the Western District of North Carolina (the "Local Rules").

## II. RELEVANT BACKGROUND

5. On September 1, 2017, JBT filed its Complaint in the Federal Court Lawsuit against Bryan Bullerdick ("Bullerdick") and B GSE Group, LLC ("B GSE") (the "District Court Defendants") alleging eight causes of action: (1) Federal Misappropriation of Trade Secrets against both defendants (the "First Claim"), (2) State Misappropriation of Trade Secrets against both defendants (the "Second Claim"), (3) Federal Unfair Competition and False Designation of Origin against B GSE (the "Third Claim"), (4) Federal Unfair Competition and False Advertising against B GSE (the "Fourth Claim"), (5) Federal Trademark Infringement against B GSE (the "Fifth Claim"), (6) Breach of Contract against Bullerdick (the "Sixth Claim"), (7) Breach of Contract against B GSE (the "Seventh Claim"), (8) Breach of Contract against B GSE (the "Eighth Claim"). Federal Court Lawsuit Dkt. No. 2.

6. The District Court Defendants filed an Answer to JBT's Complaint on September 27, 2017 and an Amended Answer on October 18, 2017 that added six counterclaims for: (1) Declaratory Judgement ("First Counterclaim"), (2) Tortious Interference ("Second Counterclaim"), (3) Negligent Misrepresentation ("Third Counterclaim"), (4) Defamation ("Fourth Counterclaim"), (5) Unfair or Deceptive Trade Practice ("Fifth Counterclaim") and (6) Utah Truth in Advertising Act ("Sixth Counterclaim"). Federal Court Lawsuit Dkt. Nos. 34 and 49.

7. On March 16, 2018, JBT filed an Amended Complaint asserting two new claims for ten total claims; (9) Defamation against both defendants (the "Ninth Claim"), and (10) Tortious

interference against both defendants (the "Tenth Claim"). Federal Court Lawsuit, Dkt. No. 99. The District Court Defendants filed a new Answer on April 4, 2018 reasserting the same counter claims. Federal Court Lawsuit, Dkt. No. 108.

8. On August 13, 2020, the Utah District Court granted JBT's Motion for Summary Judgment on its First, Second, Third, Sixth, Seventh, and Eighth claims. Federal Court Lawsuit, Dkt. No. 184. The Utah District Court also dismissed the District Court Defendants' First and Sixth Counterclaims, granted JBT's Motion for Summary Judgment on the Second, Third, and Fourth Counterclaims, and denied JBT's Motion for Summary Judgment on the Fifth Counterclaim. *Id.*

9. On September 26, 2022, the Utah District Court held a jury trial that proceeded for eight days until October 6, 2022.[1] On October 6, 2022, the jury found the Utah District Court Defendants liable on JBT's First, Second, Third, Fifth, Sixth, Seventh and Eighth Claims and awarded damages of $525,033. Federal Court Lawsuit, Dkt. No. 262. The jury also found the Utah District Court Defendants acted with willful and/or malicious intent as to JBT's First, Second, Third and Eighth claims. *Id.* The jury also awarded $0 in damages to the District Court Defendants on their remaining counterclaim. *Id.* Additionally, the jury awarded JBT $500,000 in punitive damages from B GSE and $100,000 in punitive damages from Mr. Bullerdick for their tortious interference with prospective economic advantage claim. Federal Court Lawsuit Dkt. No. 263.

10. On November 1, 2022, the Utah District Court entered judgment on the jury's verdict. Federal Court Lawsuit, Dkt. No. 273. The Utah District Court entered the Judgment

---

[1] At trial, JBT's claims were renumbered to account for the District Court Defendants winning their Motion for Summary judgment on the Fourth and Ninth claims so the Fifth Claim become the Fourth claim, the Sixth Claim became the Fifth Claim, the Seventh Claim became the Sixth Claim, the Eighth Claim became the Seventh Claim and the Tenth Claim became the Eighth Claim. The original Fourth Claim was dropped at the start of the trial.

against defendants B GSE and Bullerdick, jointly and severally, in the sum of $1,125,033 with post-judgment interest and taxable costs as fixed by the court. *Id.* As noted, the Judgment included $500,000 in punitive damages against B GSE and $100,000 in punitive damages against Bryan Bullerdick, with post-judgment interest and taxable costs as fixed by the court. *Id.* The Utah District Court also stated the Court may award to JBT attorney's fees, non-taxable cots, statutory enhanced damages, and pre-judgment interest upon separate application to the court. *Id.*

11.   There are seven post-judgment motions pending, five of which are fully briefed and under advisement with the Utah District Court and two of which are near-fully briefed.  The seven motions are:

   a. JBT's *Motion for Award of Attorneys' Fees and Nontaxable Expenses* filed on November 15, 2022. Federal Court Lawsuit, Dkt. No. 278. The District Court Defendants filed their response on December 13, 2022. Federal Court Lawsuit, Dkt. No. 299. JBT filed its reply on December 28, 2022 and the motion is now fully briefed and under consideration. Federal Court Lawsuit, Dkt. No. 305.

   b. JBT's *Bill of Costs* filed on November 15. Federal Court Lawsuit, Dkt. No. 276. The District Court Defendants filed their objections on December 13, 2022 and the motion is now fully briefed and under consideration. Federal Court Lawsuit, Dkt. No. 298.

   c. JBT's *Motion to Alter Judgment and Memorandum in Support to Enhance Damages Award* was filed on November 29, 2022. Federal Court Lawsuit, Dkt. No. 285. The District Court Defendants filed their response on December 27, 2022. Federal Court Lawsuit, Dkt. No. 300. JBT filed its

reply on January 10, 2023 and the motion is now fully briefed and under consideration. Federal Court Lawsuit, Dkt. No. 312.

d. Defendants' *Motion for Judgment as a Matter of Law and Memorandum in Support Pursuant to Rule 50(b) and, in the alternative, for a New Trial or to Alter or Amend the Judgment Pursuant to Rule 59* filed on November 29, 2022. Federal Court Lawsuit, Dkt. No. 284. JBT filed its response on December 27, 2022. Federal Court Lawsuit, Dkt. No. 303. Bullerdick filed his reply on January 10, 2023, and the motion is now fully briefed and under consideration. Federal Court Lawsuit, Dkt. No. 311.

e. JBT's *Motion for Pre-judgment and Post-judgment Interest* was filed on November 29, 2022. Federal Court Lawsuit, Dkt. No. 286. The District Court Defendants filed their response on December 27, 2022. Federal Court Lawsuit, Dkt. No. 301. JBT filed its reply on January 10, 2023, and the motion is fully briefed and under consideration. Federal Court Lawsuit, Dkt. No. 313.

f. The District Court Defendants' *Motion to Dispense with Supersedeas Bond and Stay Execution or Reduce Bond* was filed on December 1, 2022. Federal Court Lawsuit, Dkt. No. 290. JBT filed its response on December 29, 2022. Federal Court Lawsuit, Dkt. No. 306. The District Court Defendants' reply is due January 12, 2023.

g. JBT's *Motion for Leave to Register Judgment in Other Districts* filed on December 6, 2022. Federal Court Lawsuit, Dkt. No. 295. The District

Court Defendants filed their response on January 3, 2023. Federal Court Lawsuit, Dkt. No. 307. JBT's reply is due January 17, 2023.

12. On January 6, 2023 (the "Petition Date"), the Debtor filed its voluntary petition in this Court for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor elected to proceed as a small business debtor under subchapter V of chapter 11 of the Bankruptcy Code pursuant to section 1182. As of the date of filing this Motion, neither a trustee, an examiner, nor an official committee have been appointed in this chapter 11 case (the "Case"). A subchapter V trustee was appointed for this case.

13. On January 9, 2023, the Debtor filed its notice of bankruptcy in the Federal Court Lawsuit.

14. On January 10, 2023, JBT filed reply briefs to its *Motion to Alter Judgment and Memorandum in Support to Enhance Damages Award* and its *Motion for Pre-judgment and Post-Judgment Interest*. Federal Court Lawsuit, Dkt. Nos. 312 and 313. Each reply brief was drafted with the intent that it reply to the Debtor's and Bullerdick's responses. Because the replies were filed after the petition date, JBT noted that the replies were filed only as to the non-debtor defendant to avoid violating the automatic stay. *Id.* at n.1.

15. On January 10, 2023, Bullerdick filed his reply brief to the defendants' *Motion for Judgment as a Matter of Law and Memorandum in Support Pursuant to Rule 50(b) and, in the alternative, for a New Trial or to Alter or Amend the Judgment Pursuant to Rule 59*. Federal Court Lawsuit, Dkt. No. 311. The reply brief was drafted with the intent to reply on behalf of both defendants. Since it was filed after the Petition Date, the Defendants noted that the reply was on behalf of Bullerdick but was intended to apply to the Debtor to the extent not prohibited under the Bankruptcy Code. *Id.* at n.1.

### III. RELIEF REQUESTED

16. By this Motion, JBT seeks relief from the automatic stay to permit it to complete the near-complete briefing in the Federal Court Lawsuit and to permit the court in the Federal Court Lawsuit to issue rulings on pending motions five of which are fully briefed and two of which are near-fully briefed. The Federal Court Lawsuit has been pending since September 2017, and JBT believes that the Federal Court Lawsuit will be best and most efficiently adjudicated in the United States District Court for the District of Utah, Central Division before Chief Judge Robert Shelby. This is so because the case is post-trial, a judgment has been issued, and the only remaining task for the court in the Federal Court Lawsuit is to issue orders on seven pending post-trial motions. JBT is *not* asking for authority from Chief Judge Shelby for authority to execute on any judgment, but rather, merely for the authority to complete briefing and obtain rulings, which would fully liquidate the claims of JBT to aid in the administration of the bankruptcy case. Accordingly, for these reasons and the reasons set forth below, it is in the best interest of the Debtor, its estate, and its creditors, and good cause exists for this Court to grant the relief requested herein.

### IV. ARGUMENT AND AUTHORITY

17. Title 11 of the United States Code provides that a bankruptcy petition operates as a stay on the continuation of a judicial proceeding against a debtor to collect or recover a claim that arose before the commencement of a case. *See* 11 U.S.C. § 362(a)(1),(6). "The automatic stay gives the bankruptcy court an opportunity to harmonize the interests of both the debtor and creditors while preserving the debtor's assets for repayment and reorganization of his or her obligations." *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992); *see Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 301 (5th Cir. 2005); *McMillan v. MBank Fort Worth, N.A.*, 4 F.3d 362,

366 (citing *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985)). Stated differently, "[t]he automatic stay is intended to benefit creditors collectively by preventing individual creditors from acting unilaterally to the detriment of other creditors." *In re Mid-City Parking, Inc.*, 332 B.R. 798, 815 (Bankr. N.D. Ill. 2005); *see also Chesnut*, 422 F.3d at 301.

18. A bankruptcy court may terminate, annul, lift, or condition the automatic stay. *See* 11 U.S.C. § 362(d); *see also In re Robbins*, 964 F.2d at 345; *Lee v. Anasti (In re Lee)*, 461 Fed. Appx. 227, 231 (4th Cir. 2012). After notice and a hearing, a bankruptcy court shall grant relief to a party in interest from the automatic stay for cause. *See* 11 U.S.C. § 362(d)(1). Although "cause" is not defined, courts have considered numerous factors in determining if a request for relief from the automatic stay is appropriate. *See In re Laventhol & Horwrath*, 139 B.R. 109, 116 (S.D.N.Y. 1992) (citation omitted).

19. The Fourth Circuit has addressed the test to be considered by a bankruptcy court in determining whether "cause" exists to lift the automatic stay so as to allow litigation to proceed or continue to proceed in another forum. *See In re Robbins*, 964 F.2d at 345. The *Robbins* case instructs that,

> The court must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied . . . . The factors that courts consider in deciding whether to lift the automatic stay include (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

*Id.*

20. For the reasons set forth below, the *Robbins* factors weigh in favor of lifting the automatic stay on a limited basis with respect to the Federal Court Lawsuit.

### A. Modifying the Stay Promotes the Judicial Economy and will Aid in Resolving this Case

21. Here, modifying the stay promotes judicial economy. The Federal Court Lawsuit is post-trial. The court in the Federal Court Lawsuit has entered a judgment on the verdict. All that remains in the Federal Court Lawsuit is the completion of briefing on post-trial motions, the vast majority of the briefing on those post-judgment motions is complete and to the extent that the balance of briefing is not complete, filing was (1) withheld to avoid violating the automatic stay or (2) is not yet due but is materially complete.

22. Lifting the stay will aid the Court rather than interfere with it. The Federal Court Lawsuit is near completion. Obtaining orders on the remaining motions will fully liquidate JBT's claim(s) against the Debtor's estate. The progress of this Case depends on the determination of the amounts of the claims JBT possesses against the Debtor, which can readily be decided by Chief Judge Shelby. *See In re Taub*, 438 B.R. 39, 46 (Bankr. E.D.N.Y. 2010). A court with over five years of exposure to JBT's claims – and which presided over the parties' trial on the merits – can quickly liquidate them. This will prevent the need for this Court to expend scarce judicial resources re-inventing the wheel.

23. The continuance of the automatic stay with regard to the Federal Court Lawsuit will result in time-consuming, duplicative and expensive litigation in this Case on issues that are poised for adjudication by the Utah District Court. Resolution of the Federal Court Lawsuit will expedite and facilitate the administration of the Debtor's claims. Moreover, no potential harm to other creditors will result by lifting the stay and allowing the Federal Court Lawsuit to proceed, as relief may be limited so that this Court retains exclusive jurisdiction with regard to enforcement of any judgment obtained against the Debtor.

24. The Debtor will incur less administrative expense by resolving JBT's claims in the District of Utah. First, the Debtor and Bullerdick are represented by the same counsel. That counsel has filed briefing on behalf of the Debtor and Bullerdick throughout the post-judgment proceedings and purports to do the same since the commencement of this Case provided they do not violate the Bankruptcy Code. Second, the Debtor and Bullerdick's defense costs are being paid by insurance.

25. The Debtor elected to proceed as a small business debtor under subchapter V of chapter 11 of the Bankruptcy Code. Subchapter V imposes material deadlines on the Debtor that are short and rigid. The Utah District Court can readily resolve JBT's outstanding claims against the Debtor and provide the Debtor with the tools to satisfy the statutorily abbreviated deadlines imposed by subchapter V. Therefore, modification of the stay will support the judicial economy and aid this Court in resolving the Debtor's Case.

    **B.**    **The Issues Pending are Before the Best-Equipped Forum**

26. The first *Robbins* factor weighs in favor of lifting the stay. The claims and causes of action in the Federal Court Lawsuit are, admittedly, a mixture of state and federal claims. But resolution in this Court is not necessary. The court in the Federal Court Lawsuit is intimately familiar with the case. Chief Judge Shelby of the United States District Court for the District of Utah has presided over the Federal Court Lawsuit since September 5, 2017. Federal Court Lawsuit, Dkt. No. 10. Chief Judge Shelby ruled on voluminous pretrial motions, presided over a two week jury trial, and entered a judgment in this case. The claims that were tried to judgment include the First, Second, Third, Fifth, Sixth, Seventh and Eighth Claims. The court that presided over their trial and entered judgment on the verdict has the most extensive knowledge about the matter and is the best resource for resolving outstanding issues. Modification of the stay will

allow the forum most experienced with the law and facts of the Federal Court Lawsuit to resolve the few remaining issues.

### C. JBT Does Not Seek Permission to Enforce a Judgment

27. The third *Robbins* factor weighs in favor of lifting the stay. JBT does not seek modification of the stay to permit it to seek enforcement of any judgment and has not requested such relief. JBT suggests that this Court can enter an order modifying the stay simply to allow the parties in the Federal Court Lawsuit to complete and file briefing regarding pending motions as to all parties and allow Chief Judge Shelby to rule on such motions. To the extent JBT seeks enforcement of any judgment against the Debtor, it will do so in this Court.

28. JBT's prior efforts in the Federal Court Lawsuit should not have been in vain, particularly when Chief Judge Shelby can effectuate a quicker and more efficient resolution. For the above reasons, this Court should lift the automatic stay with respect to the Federal Court Lawsuit.

### V. WAIVER OF RULE 4001(A)(3) STAY OF EFFECTIVENESS OF ORDER

29. JBT respectfully requests that the Court waive the stay imposed by Bankruptcy Rule 4001(a)(3) so that the order on this Motion is effective immediately. Such waiver will allow the parties and the Utah District Court, to proceed immediately with all matters pending in the Federal Court Lawsuit, promoting a just and efficient resolution of the litigation.

### VI. NOTICE

30. Notice of this Motion has been given to: (a) the Debtor; (b) counsel for the Debtor; (c) the Office of the Bankruptcy Administrator for the Western District of North Carolina; (d); the Subchapter V Trustee appointed in this case; and (e) all parties requesting notice pursuant to

Bankruptcy Rule 2002. JBT respectfully submits that, in light of the nature of the relief requested herein, no further notice is necessary or required.

## VII. PRAYER

WHEREFORE, JBT respectfully requests that this Court enter an order substantially in the form of the Proposed Order, lifting the automatic stay on a limited basis for the Federal Court Lawsuit to proceed before Chief Judge Shelby in the District of Utah. JBT further requests such other and further relief to which JBT may be justly entitled.

Dated: January 13, 2023
Charlotte, North Carolina

HAMILTON STEPHENS
STEELE + MARTIN, PLLC

/s/ *Glenn C. Thompson*
Glenn C. Thompson (NC Bar No. 37221)
525 North Tryon Street, Suite 1400
Charlotte, North Carolina 28202
Telephone: (704) 344-1117
Facsimile: (704) 344-1483
gthompson@lawhssm.com

and

**DYKEMA GOSSETT, PLLC**

**Steven M. Zeller** (*pro hac vice*)
Illinois Bar No. 6238416
szeller@dykema.com
**Joshua A. Fishman** (*pro hac vice*)
Illinois Bar No. 6332677
jfishman@dykema.com
10 South Wacker Drive
Suite 2300
Chicago, IL 60606
Tel.: (312) 876-1700
Fax: (866) 890-2670

and

**Nicholas Zugaro** (*pro hac vice*)
Texas Bar No. 24070905
nzugaro@dykema.com
5 Houston Center
1401 McKinney Street, Suite 1625
Houston, Texas 77010
Tel.: (713) 904-6900
Fax: (214) 462-6401

*Counsel for John Bean Technologies Corporation*