IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **B GSE GROUP, LLC,** | ) | Case No. 23-30013 |
| | ) | |
| Debtor. | ) | |

## MOTION FOR SANCTIONS FOR VIOLATION OF AUTOMATIC STAY

Now comes debtor B GSE Group, LLC (the "Debtor") and moves the Court pursuant to 11 U.S.C. § 362 and Federal Rules of Bankruptcy Procedure 9020 and 9014 for sanctions against Prime Mechanical of Wisconsin LLC ("PMW") for willful violation of the automatic stay. In support of this motion, the Debtor respectfully shows the Court as follows:

### BACKGROUND

1. The Debtor engineers and manufactures ground support equipment for commercial and military aircraft. The company's products include power units, air units, fueling equipment, underground service pits, and hose systems.

2. On January 6, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 (Subchapter V) of the United States Bankruptcy Code in this Court. The Debtor continues in possession of its property and the management of its business as a debtor in possession pursuant to section 1182 of the Bankruptcy Code.

3. Prior to the Petition Date, the Debtor entered into a contract with PMW dated October 4, 2022 for the manufacture and delivery of pre-conditioned air units ("PCAs"), including manufacturing labor and the provision of related accessories. The air units are to be utilized in an Air National Guard construction project in which PMW is a mechanical subcontractor, located at Truax Field in Madison, Wisconsin.

MWH: 10782.001; 00028136.1

4.  It should be noted that it is customary and required in construction projects involving the U.S. military that all design, manufacturing, and installation plans are to be submitted by the general contractor to the architectural and/or engineering firm retained by the applicable governmental agency for approval (the "Submittal").

5.  The Debtor initially provided a quote to PMW for the requested PCAs on September 19, 2022, consistent with its standard payment terms and conditions.

6.  The Debtor's initial quote to PMW included a contract price of $426,360.00. The initial quote also included an optional add-on for insulated steel piping, for the additional amount of $232,800.00.

7.  PMW wished to include the optional piping components as part of the purchase, and the parties negotiated various terms of the agreement in early October of 2022.

8.  The parties' negotiations successfully concluded on October 3, 2022, resulting in the following terms:

- A total contract price of $659,160.00 ($426,360.00 for the PCAs and accessories, and $232,800 for the steel piping);

- Shipment of pipe and accessories within ten weeks of Submittal approval, and shipment of the manufactured PCAs within twenty weeks of Submittal approval;

- Ten percent of the cost of the piping and accessories to be paid upon Submittal approval, another ten percent upon their arrival in Wisconsin, and the balance within 30 days of such arrival; and

- Ten percent of the cost of the PCAs to be paid upon Submittal approval, another ten percent upon their arrival in Wisconsin, and the balance within 30 days of such arrival.

9.  PMW submitted a purchase order to the Debtor on October 4, 2022, which incorporated the parties' prior, written communications on the foregoing terms.

10. The Debtor then duly provided its portion of the Submittal on or about October 13, 2022.

11. The engineering firm retained by the Air National Guard (Burns & McDonnell) returned the Debtor's submission, with comments, on two occasions – once in November and once in December of 2022. Certain of the firm's comments related to installation of the PCAs and accessories, rather than their manufacture. Regardless, the Debtor provided amended documentation promptly upon receipt of the firm's comments related to the PCAs. The last amendment was provided on or about December 21, 2022.

12. Further, the Debtor offered to speak with Burns & McDonnell to clarify its comments and the more limited scope of the Debtor's work on the project. PMW informed the Debtor that it should not contact the engineering firm for any reason.

13. The Debtor has received no further communication regarding the Submittal itself. However, one day prior to the Petition Date, PMW contacted the Debtor to inquire how quickly it could provide deliverables under the parties' contract.

14. On January 11, 2023, five days after the Petition Date and with actual knowledge of the Debtor's bankruptcy filing, PMW wrote to the Debtor stating that the parties' contract "ha[d] been cancelled."

**RELIEF REQUESTED**

15. The Debtor requests the entry of an order awarding it actual damages, costs and attorneys' fees incurred in the prosecution of this motion, and punitive damages against PMW for its willful violation of the automatic stay in purporting to unilaterally terminate the parties' contract post-petition.

**BASIS FOR REQUESTED RELIEF**

16. Section 362(a) of the Bankruptcy Code prohibits creditors from, among other things, taking "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

17. Executory contracts and leases are property of the bankruptcy estate. "'As property of the estate, the debtor's interests in such contracts or leases are protected against termination or other interference that would have the effect of removing or hindering the debtor's rights in violation of section 362(a)(3).'" *Factory Sales & Eng'g v. Electrica Nueva Energia S.A. (In re Factory Sales & Eng'g, Inc.)*, 2017 Bankr. LEXIS 3538, *7-8 (Bankr. E.D. La. Oct. 12, 2017). "Even a properly based termination – for example, one based on nonpayment of rent or other violation of a lease or contract – is stayed under [section 362(a)(3)] or under section 362(a)(6), which broadly stays acts 'to collect or recover a claim against the debtor.'" *Id.* at *8.

18. The automatic stay of section 362 is among the most basic safeguards afforded to a debtor under the Bankruptcy Code and "courts must display a certain rigor in reacting to stay violations." *Rawles v. Wych (In re Rawles)*, 2009 Bankr. LEXIS 2988, 11 (Bankr. D. Md. June 17, 2009).

19. Because executory contracts are property of the estate, section 362(a)(3) precludes their cancellation without court action. *See A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir.) ("even the right to cancel an insurance policy issued to the debtor has uniformly been held to by stayed under section 362(a)(3)"), *cert. denied*, 479 U.S. 876 (1986).

20. A violation of the automatic stay is punishable as contempt of court, and such relief may be granted by motion pursuant to Bankruptcy Rule 9014. *See* 3 *Collier on Bankruptcy* ¶ 362.12[2] (16th ed. 2023); Fed. R. Bankr. P. 9020.

21. PMW's intentional attempt to terminate its ongoing contract with the Debtor, with knowledge of the Debtor's pending Chapter 11 case, constituted a willful act to obtain or exercise control over estate property in violation of the automatic stay.

22. The Bankruptcy Code provides that a debtor injured by any willful violation of the stay shall recover actual damages and, in appropriate circumstances, may recover punitive damages. See 11 U.S.C. §362(k)(1). "Willfulness does not refer to the intent to violate the automatic stay, rather the intent to commit the act which violates the automatic stay." *In re Elks*, 2012 Bankr. LEXIS 2893, 8 (E.D.N.C. 2012) (citations omitted). The creditor's acts are deemed willful if they are intentional and violate the automatic stay protections afforded under the Bankruptcy Code. *Id.*

23. Upon finding a willful violation of the automatic stay, monetary damages may be awarded to the debtor to compensate for any damages caused by the creditor's actions pursuant to section 362(k). *In re Thorpe*, 2011 Bankr. LEXIS 1834, 4 (E.D.N.C. May 17, 2011); *In re Elks*, 2012 Bankr. LEXIS 2893, at 9. Punitive damages may be awarded by the court for the sole purpose of "changing the behavior of the creditor." *Id.*

24. In the present case, the Debtor has incurred professional fees and costs related to this matter, as well as substantial lost profits it would have earned had PMW not willfully violated the stay and breached the parties' agreement. *See In re Computer Communs.*, 824 F.2d 725 (9th Cir. 1987) (upholding award of lost profits as sanction for termination of contract in violation of automatic stay).

25. In addition, a creditor must take immediate action "to restore the status quo" when it learns that the automatic stay has been violated. *In re Combs*, 2006 Bankr. LEXIS 3569, 7 (N.D. Ga., November 20, 2006) (citations omitted).

26. Despite multiple communications from the Debtor to PMW following its purported cancellation of the parties' contract, PMW has failed and refused to acknowledge the requirements of the automatic stay or to honor the terms of their agreement. To the contrary, the Debtor is informed and believes that PMW has proceeded to contract with another party to supply the same goods it previously agreed to purchase from the Debtor for the Truax Field project.

27. An award of punitive damages is therefore appropriate in this case given PMW's intentional violation of the stay and abject refusal to restore the status quo upon notification that its attempt to terminate the underlying contract was wrongful.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court award the estate actual and punitive damages against PMW for its willful violation of the automatic stay, and such other relief as the Court deems just and proper.

Dated: Charlotte, North Carolina
January 27, 2023

          **MOON WRIGHT & HOUSTON, PLLC**

          */s/ Richard S. Wright*
          Richard S. Wright (Bar No. 24622)
          212 North McDowell Street, Suite 200
          Charlotte, North Carolina 28204
          Telephone: (704) 944-6560
          Facsimile: (704) 944-0380
          *Counsel for the Debtor*