UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

In re:

B GSE GROUP, LLC

Debtor.

Case No. 23-30013

Chapter 11

**OBJECTION TO DEBTOR'S MOTION FOR SANCTIONS FOR VIOLATION FOR AUTOMATIC STAY**

NOW COMES Prime Mechanical of Wisconsin, LLC ("**Prime Mechanical**"), by its counsel Steinhilber Swanson LLP, by Claire Ann Richman, and hereby objects to the Motion for Sanctions for Violation of the Automatic Stay ("**Motion for Sanctions**") filed by Debtor B GSE Group, LLC ("**Debtor**" or "**BGSE**"). In support of this objection, Prime Mechanical states as follows:

**BACKGROUND**

1. Prime Mechanical is a Wisconsin LLC and a subcontractor on a project to construct facilities for the Wisconsin Air National Guard at Truax Field, Madison, Wisconsin ("Project"). The period for Prime Mechanical's performance of its contract for the Project was September 27, 2022 through a completion date of March 26, 2023. Of this six month period, five months were budgeted for receiving equipment from the Debtor, and one month was budgeted for the installation of the equipment. No allowance could be made for rejection of equipment or materials. Prime Mechanical was required to provide performance and payment bonds to guarantee timely completion of its portion of the Project. *See* Declaration of Bryan Ramlow in Support

1

of Prime Mechanical of Wisconsin's Objection to Debtor's Motion for Sanctions, ¶¶ 2, 3 filed contemporaneously herewith and incorporated herein ("**Ramlow Declaration**").

2.  Prime Mechanical and BGSE entered into negotiations for BGSE to manufacture and deliver pre-conditioned air units ("**PCAs**") for the Project in September 2022. During such negotiations, Prime Mechanical made BGSE aware of the timelines required for its performance of the Project. BGSE assured Prime Mechanical that it would be able to provide the required PCAs within 20 weeks of the approval of its submittal by the Wisconsin Air National Guard's engineering firm Burns & McDonnell. These negotiations were incorporated into a final Purchase Order dated October 4, 2022 ("**Purchase Order**"). Ramlow Declaration, ¶ 4.

3.  In military projects, it is required that all equipment and vendors be approved by the engineering or architectural firm retained by the government for the project. Ramlow Declaration, ¶ 5. BGSE represented to Prime Mechanical that it was a qualified supplier for military contracts and that it would be able to provide equipment that would be approved. Ramlow Declaration, ¶ 6.

4.  In the Purchase Order, BGSE represented that "[BGSE] agrees that all plans specifications and addenda requirements have been carefully examined and quoted equipment is compliant." Ramlow Declaration, ¶ 7.

5.  BGSE made its first submittal on or about October 13, 2022. The first submittal was rejected on October 24, 2022. Ramlow Declaration, ¶ 8. BGSE then made its second submittal on or around November 30, 2022, which was rejected on or

2

about December 15, 2022. Ramlow Declaration, ¶ 9. On or about December 21, 2022, BGSE provided its third submittal. On or about January 11, 2023, fully three months after the first attempt to obtain an approved submittal, this third submittal package was only provisionally approved in part. Several significant aspects of BGSE's submittal, including the PCAs remain unapproved. Ramlow Declaration, ¶ 10.

6. Due to BGSE's persistent failure to obtain approval for its PCAs, Prime Mechanical was forced to contract with another supplier for PCAs to minimize the delays caused by BGSE's failed submittals, to protect its bond, and to mitigate any potential damages which may be asserted against Prime Mechanical. Ramlow Declaration, ¶ 11.

7. On January 11, 2023, Prime Mechanical cancelled the Purchase Order due to BGSE's failure to timely obtain a fully approved submittal package. Ramlow Declaration, ¶ 12.

8. On January 11, 2023, Prime Mechanical sent an email to BGSE stating "Prime Mechanical regrets to say that the purchase order 1708 for PCA units at B 412 Truax has been cancelled." ("Cancellation Email") Ramlow Declaration, ¶ 13.

9. At the time Prime Mechanical sent the Cancellation Email it had not received any notice that BGSE had filed bankruptcy and had no actual knowledge that BGSE had filed bankruptcy. Ramlow Declaration, ¶ 14.

10. On January 16, 2023, Prime Mechanical, received a letter from Debtor's counsel informing it of BGSE's bankruptcy case and of the automatic stay. On the same date, Prime Mechanical also received an email from BGSE's President Bryan

3

Bullerdick informing of the bankruptcy. Prior to these communications Prime Mechanical had no knowledge of BGSE's chapter 11 filing. Ramlow Declaration, ¶ 15.

11. On February 24, 2023, BGSE filed its Plan of Reorganization [Doc. 83] ("**Plan**"), which contemplates that distributions under the Plan will be funded by a sale of "All assets of the Debtor, except and excluding all cash, cash equivalents, bank accounts and deposits therein, refunds, escrows, litigation claims, and all proceeds of the foregoing." *See* Plan, Art. 1, §§ 1.5, 1.40; Art. 7, § 7.1.

## OBJECTION

### I. Prime Mechanical did not have Actual Knowledge of the Bankruptcy Case at the Time the Purchase Order was Cancelled.

12. BGSE asserts that Prime Mechanical had actual knowledge of this chapter 11 case when Prime Mechanical cancelled the Purchase Order. *See* Motion for Sanctions, ¶ 14. However, Prime Mechanical did not receive any notice of BGSE's bankruptcy until January 16, 2023. Ramlow Declaration, ¶¶ 14, 15. Prime Mechanical was also not listed as a creditor in BGSE's bankruptcy petition, *see* Voluntary Petition Under Chapter 11 Subchapter V, [Doc 1]. Prime Mechanical had no actual or constructive knowledge of this case until January 16, 2023 when Debtor and Debtor's counsel contacted Prime Mechanical.

### II. The Cancellation of the Purchase Order does not Constitute a Violation of the Automatic Stay.

13. The automatic stay operates to stay any act "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The bankruptcy estate consists of "all

4

legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C § 541(a)(1). This includes contracts entered into by a debtor; however, if a contract has expired or been terminated as of the date of the bankruptcy case, then the contract is not property of the estate.

14.     However, the Purchase Order is not property of the estate because it is not a contract; rather, it is an offer to purchase goods upon certain terms, which had not yet ripened into a contract. In the alternative, even if the Purchase Order had ripened into a contract, it lapsed pre-petition when BGSE repeatedly failed to obtain approval of its submittal package within a reasonable time sufficient to allow Prime Mechanical to perform under its contract with the prime contractor on the Project.

### A. *The Purchase Order was an offer to purchase goods conditioned on BGSE's ability to obtain a fully approved submittal.*

15.     The cancellation of the Purchase order does not violate the automatic stay because the Purchase Order was not a contract, but an offer to purchase goods which would not ripen into a contract until BGSE obtained a fully approved submittal package. Pursuant to Wis. Stat. § 402.205, an offer by a merchant "to buy or sell goods in a signed writing which by its terms gives assurance that it will be held open is not revocable, […] during the time stated or if no time is stated for a reasonable time, but in no event may such period of irrevocability exceed 3 months…" Wis. Stat. § 402.205. The term reasonable time "depends on the nature, purpose, and circumstances of the action." Wis. Stat. § 401.204(1).

16.     Here, the Purchase Order is an offer to purchase goods from BGSE conditioned on BGSE's ability to obtain a fully approved submittal within a

reasonable time. This offer could then be accepted by BGSE's obtaining full approval and shipping conforming goods. *See* Wis. Stat. § 402.206(1)(b) (stating that an offer to purchase goods may be accepted by the prompt shipment of conforming goods). The conditional nature of the parties' relationship is evinced by the fact that BGSE is not entitled to any payment until it obtains a fully approved submittal package. *See* Ramlow Declaration, ¶ 16. Without a fully approved submittal package, no performance was due by either party: BGSE was under no obligation to deliver any products, and Prime Mechanical was under no obligation to purchase PCAs from BGSE. Ultimately, BGSE failed to obtain a fully approved submittal package within a reasonable time. It knew the schedule that Prime Mechanical was required to follow, and the dates by which BGSE's goods would have to be delivered in order for Prime Mechanical to meet its obligations. By failing to obtain a fully approved submittal in time for Prime Mechanical to perform under its contract, BGSE failed to effect a prompt acceptance of the Purchase Order, and the Purchase Order never ripened into a contract. The Purchase Order is not an executory contract and is not property of BGSE's bankruptcy estate. Consequently, cancelling the Purchase Order did not violate the automatic stay.

> **B. Even if the Purchase Order did constitute a contract, it lapsed prepetition due to BGSE's default and inability to demonstrate that it could adequately perform under the terms of the Purchase Order.**

17.    To the extent the Court finds that the Purchase Order constituted a contract, BGSE defaulted on the Purchase Order when it failed to timely obtain an approved submittal. The Purchase Order incorporated the terms of prior negotiations

6

and representations between BGSE and Prime Mechanical. In the Purchase Order, BGSE expressly represented that "all plans, specifications, and addenda requirements have been carefully examined and quoted equipment is compliant." Ramlow Declaration, ¶ 4. The parties understood that BGSE would have to obtain a fully approved submittal package before any further performance on the Purchase Order would be due. Ramlow Declaration, ¶ 17. BGSE was not entitled to any payment until it obtained an approved submittal. Ramlow Declaration, ¶ 16. To this day, BGSE has failed to obtain a fully approved submittal. Ramlow Declaration, ¶ 10.

18. BGSE was aware of Prime Mechanical's schedule for performance when it entered into the Purchase Order. Due to BGSE's repeated failure to obtain an approved submittal, it became impossible for Prime Mechanical to perform under its contract with the prime contractor on the Project. BGSE's repeated failures caused significant delays which significantly threatened Prime Mechanical's ability to meet its schedule for the Project and exposed Prime Mechanical to potential liquidated damages. Ramlow Declaration, ¶ 18. BGSE warranted that it could provide the PCAs and obtain approval within the time frames required by the Project. Arguably, upon rejection of the first submittal, BGSE was in breach of the Purchase Order, and Prime Mechanical was entitled to terminate. BGSE's persistent failure to meet its obligations entitled Prime Mechanical to take commercially reasonable steps to protect itself, including seeking an alternative supplier for the goods BGSE was required to produce. *See* Wis. Stat. § 401.712 (entitling a buyer of goods, upon a

7

seller's breach to make a reasonable purchase of goods in substitution for those due from the seller).

### III. The Bankruptcy Code does not Permit BGSE to Assume the Purchase Order as an Executory Contract.

19. Even if the Purchase Order is deemed to be an executory contract, BGSE would not be able to assume the Purchase Order. The purpose of § 365 is to allow a debtor to assume executory contracts which are beneficial to the estate and to reject executory contracts which are burdensome to the estate. *See OR Route 5 Co., LLC v. Penn Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d 373, 382 (2d Cir. 2008). While courts typically defer to the business judgment of a debtor on the decision to assume or reject an executory contract, the court should still consider whether the proposed assumption is beneficial to the estate. *See In re Del Grosso*, 115 B.R. 136, 138 (Bankr. N.D. Ill. 1990) ("In general, the standard to be applied for approval of the assumption is the business judgment standard, which requires a sufficient showing of (1) whether performance of the contract will be advantageous to the estate, and (2) whether the estate will be able to perform"). Here, it is clear that there is no benefit to the estate in assuming the Purchase Order. Rather, by assuming the Purchase Order, BGSE would only be obligating itself to pay significant cure costs which greatly outweigh any possible profit that it could obtain by performing.

20. Even if BGSE sought to assume the Purchase Order, it would not be permitted to do so. To assume an executory contract in which the debtor has defaulted on its obligations, the debtor must be able to (1) cure, or provide adequate assurance that the debtor will promptly cure, the default, (2) compensate, or provide adequate

8

assurance that the debtor will promptly compensate, any contract counterparty for actual pecuniary losses resulting from such default, and (3) provide adequate assurance of future performance under the contract. 11. U.S.C. § 365(b)(1).

21.    Here, BGSE cannot cure, or provide adequate assurance that it would promptly cure, its default. Cure typically means that the contract must be brought back into compliance with its terms. *In re Jennifer Convertibles, Inc.*, 447 B.R. 713, 721 (Bankr. S.D.N.Y. 2011). To cure its default under the Purchase Order, BGSE would have to, at the very least, obtain a fully approved submittal package. Without such approval, neither BGSE nor Prime Mechanical can perform under the contract. Thus far, BGSE has shown clearly that it is unable to obtain approval. BGSE's submittals have been rejected twice, and the long delay in receiving any response with respect to the third submittal indicates that full approval is highly unlikely. Furthermore, an approved submittal at this juncture is not, in and of itself, sufficient to cure BGSE's default. BGSE knew that Prime Mechanical's work schedule did not allow for rejection of BGSE's submittals, and BGSE represented that it could deliver conforming goods within that time frame. Ramlow Declaration, ¶ 4. BGSE cannot bring the Purchase Order into compliance with its terms because the time for BGSE's performance has closed.

22.    Furthermore, to assume the Purchase Order, BGSE would also be required to compensate Prime Mechanical for its pecuniary losses resulting from BGSE's failure to obtain approval for its equipment, including any liquidated damages which may be assessed against Prime Mechanical for delays resulting from

9

BGSE's default, as well as the Prime Mechanical's costs in finding and contracting with an alternative supplier, an action which was necessary to mitigate the damages and delays caused by BGSE's persistent failure to comply with its obligations under the Purchase Order.

23. Additionally, BGSE cannot provide adequate assurance of future performance. Whether a debtor has provided adequate assurance of future performance relies on the particular facts of the situation, and is determined on a case-by-case basis. *Seacoast Prods., Inc. v. Spring Valley Farms, Inc.*, 34 B.R. 379, 380 (M.D.N.C. 1983)

24. Not only has BGSE failed to obtain approved submittals in a time period which meets contract obligations, but its proposed Plan also plainly demonstrates that BGSE will not be able to perform its obligations under the Purchase Order. Pursuant to the Plan, BGSE plans to sell all of its assets to an undisclosed purchaser. *See* Plan, Art. 1, §§ 1.5, 1.40; Art. 7, § 7.1. There is no indication that any purchaser would be qualified to perform the work required under the Purchase Order. Furthermore, the purchaser of BGSE's assets, to the extent that such assets include BGSE's contract with Prime Mechanical would need to obtain its own approval, which would create even more delay in a project that has already suffered nearly six months of delays as a result of BGSE's conduct. Even if BGSE's third submittal was fully accepted and processed today there are still five months' worth of manufacturing to be performed before a single PCA could be delivered under

the Purchase Order. Based on the Plan filed by BGSE, future performance of the Purchase Order by BGSE is impossible.[1]

25.  BGSE would not be able to assume the Purchase Order as an executory contract, and consequently, the termination of the Purchase Order has no real effect on BGSE's estate. BGSE's Plan does not evince any intention to assume executory contracts with its customers; rather, the Plan contains only generic language reserving the Debtor's right to move to assume executory contracts up to the Effective Date of the Plan. *See* Plan, Art 5, § 5.1. Moreover, it is clear from BGSE's Plan that it does not intend to continue operating, but instead is liquidating after disposing of all of its assets. If BGSE does not intend to continue operating and is not holding itself out as ready to perform its obligations, it is unclear what damages BGSE can actually claim as a result of Prime Mechanical's cancellation.

26.  BGSE never met even the first condition in the Purchase Order which would have entitled it to partial payment, and BGSE cannot prove any claim of lost profits where it is clear from the circumstances that BGSE would never have been able to perform. Consequently, the only effect of BGSE assuming the Purchase Order would be to obligate the estate to pay burdensome cure costs.

### IV. The Court Should Retroactively Grant Relief from the Automatic Stay to Permit Termination of the Purchase Order.

---

[1] Additionally, subsequent to Prime Mechanical's termination of the Purchase Order, Prime Mechanical learned that BGSE made material misrepresentations with respect to one of the projects which BGSE used to support its qualifications an approved supplier and manufacturer for the Project. BGSE represented to Prime Mechanical and in its submittals that it had manufactured and installed its CoolJet PCAs at MCAS Beaufort in South Carolina. However, Prime Mechanical has since learned that the PCAs installed at MCAS Beaufort were actually manufactured by a different supplier. See Ramlow Declaration, ¶ 19. This misrepresentation raises serious questions as to whether BGSE is legally permitted to perform the work pursuant to the Purchase Order.

11

27. Pursuant to 11 U.S.C. § 362(d), the Bankruptcy Court has the discretionary power to "terminate, annul, modify, or place conditions upon the automatic stay. *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 976 (1st Cir. 1997). A court's power to annul the stay allows the court to grant retroactive relief and validate actions taken before the date upon which the court rules. *Id.* at pp. 976-77. While this power is meant to be exercised in a limited fashion, instances where the action in violation of the automatic stay was inadvertent and made in ignorance of the pending bankruptcy sometimes warrant retroactive relief. *Id.* Ultimately, there is no bright line rule; rather, retroactive relief is granted when the particular facts show that it is justified. *Id.* Here, the facts clearly support annulling the automatic stay and granting retroactive relief to Prime Mechanical.

28. First, cause exists to grant relief from the automatic stay. Relief from the automatic stay may be granted when the property at issue "is not necessary for an effective reorganization." The Purchase Order is not necessary for an effective reorganization. As explained above, BGSE cannot assume the Purchase Order, and even if BGSE could, the cure costs would outweigh any benefit to the estate. Furthermore, BGSE is proposing a liquidating plan. When BGSE is attempting to sell its assets and liquidate, there is no logical argument that the Purchase Order is necessary for an effective reorganization.

29. Second, Prime Mechanical's actions to terminate the Purchase Order were taken without actual or constructive knowledge of the bankruptcy case. Prime Mechanical is not listed as a creditor, even for notice purposes, on BGSE's schedules,

nor is Prime Mechanical included in BGSE's mailing matrix. Prime Mechanical took commercially reasonable action to protect its interests and its business in the face of BGSE's persistent failures of performance. Based on the Plan filed by BGSE, Prime Mechanical's desire to terminate the Purchase Order is justified, because BGSE plainly does not intend to fulfill its obligations, even if it was able to do so.

30.    Where the Purchase Order cannot be fulfilled by the Debtor, and the Debtor is planning to liquidate, and Prime Mechanical had no knowledge, actual or constructive, of the bankruptcy filing, the circumstances plainly support retroactively annulling the automatic stay to validate Prime Mechanical's cancellation of the Purchase Order.

WHEREFORE, Prime Mechanical of Wisconsin, LLC respectfully requests the Court enter an order:

a. Denying the Motion for Sanctions for Violation of the Automatic Stay filed by Debtor B GSE Group, LLC;

b. Annulling the stay with respect to Prime Mechanical of Wisconsin, LLC's termination of the Purchase Order; and,

c. Granting such other and further relief as the Court deems just and equitable.

Dated: March 9, 2023    Respectfully submitted,

**STEINHILBER SWANSON LLP**
Attorneys for Prime Mechanical of Wisconsin LLC

By:    */s/ Claire Ann Richman*
Claire Ann Richman
*(Admitted Pro Hac Vice)*
122 W Washington Ave, Suite 850
Madison, WI 53703
TEL: (608) 630-8990/FAX: (608) 630-8991
crichman@steinhilberswanson.com

-and-

**SHUMAKER, LOOP & KENDRICK, LLP**

Ronald D. P. Bruckmann
(N.C. Bar No. 53693)
101 S. Tryon Street, Suite 2200
Charlotte, NC 28280
Telephone:  704-375-0057
Facsimile:  704-332-1197
rbruckmann@shumaker.com

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

In re:

B GSE GROUP, LLC                              Case No. 23-30013

       Debtor.                              Chapter 11

### CERTIFICATE OF SERVICE

I certify that on March 9, 2023, I caused the foregoing Objection to Debtor's Motion for Sanctions for Violation of Automatic Stay to be filed, which caused a copy to be served on all parties receiving electronic notice by CM/ECF in this case.

       By:    */s/ Ronald Bruckmann*
               Ronald Bruckmann