IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **B GSE GROUP, LLC,** | ) | Case No. 23-30013 |
| | ) | |
| Debtor. | ) | |

## MOTION FOR APPROVAL OF ASSET SALE
**(Subject to Higher & Better Offers)**

Debtor B GSE Group, LLC (the "Debtor") moves the Court for entry of a final order (1) approving the sale of certain of its assets free and clear of all liens, claims, interests, and encumbrances (with the same transferring to the proceeds of such sale); (2) approving related overbid procedures; and (3) granting related relief. In support of this motion, the Debtor respectfully shows the Court as follows:

### I. BACKGROUND

1. The Debtor is a North Carolina limited liability company that manufactures ground support equipment for commercial and military aircraft. The Debtor operates from a principal office in Huntersville, North Carolina, with leased fabrication and assembly plants in Morgantown, West Virginia.

2. The Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the United States Bankruptcy Code in this Court on January 6, 2023.

3. GreerWalker LLP ("GreerWalker") serves as the Court-appointed financial advisor to the Debtor (the "CRO"). Cole Hayes, Esq. is the Subchapter V trustee.

4. The Debtor previously filed its *Plan of Reorganization* (the "Plan"), classifying claims against the estate and describing how the Debtor proposes to satisfy those claims. The sale detailed in this motion operates in tandem with the Plan.

5. The Debtor's assets to be sold consist of certain ongoing contracts, related receivables, and intellectual property. Other property of the Debtor includes furniture, fixtures, and equipment, cash, cash equivalents, bank accounts and deposits therein, refunds, escrows, litigation claims, other contracts and accounts receivable, and the proceeds of the foregoing, all of which are *not* included in the proposed sale.

6. Truist Bank ("Truist") holds a first priority lien on the Debtor's accounts and general intangibles, and a second priority lien on all other assets. After the post-petition liquidation of certain non-Debtor collateral, the Debtor is indebted to Truist in the amount of approximately $490,000.00 pursuant to a revolving line of credit and a term equipment loan.

7. The U.S. States Small Business Administration also holds a blanket lien on the Debtor's personal property (junior only to Truist with respect to accounts and general intangibles), securing an indebtedness of approximately $530,000.00.

8. The Debtor scheduled trade payables and other unsecured claims of $4,409,428.65 (excluding unsecured deficiency claims).

## II. PROPOSED SALE AND OVERBID PROCEDURE

9. The Debtor attempted to sell its operating assets to satisfy the claims of its creditors during the bankruptcy case. In February of 2023, GreerWalker sent solicitations to approximately 250 potential purchasers (the "Potential Purchasers"). The Potential Purchasers were comprised of competitors, suppliers, brokers, and strategic industry participants.

10. Potential Purchasers were afforded the opportunity to receive additional due diligence materials and to confer with the Debtor's management upon the execution of a Non-Disclosure Agreement. Twelve Potential Purchasers executed Non-Disclosure Agreements, received due diligence information, and conferred with management.

11. However, after reviewing the Debtor's contractual obligations and considering the factors that led the company to seek Chapter 11 protection, none of the Potential Purchasers offered to purchase the Debtor's assets (in whole or in part).

12. Luckey Enterprises, LLC ("Luckey"), an entity owned by the holder of the equity interests in the Debtor, then secured financing and offered to purchase a sub-set of the Debtor's assets on or about April 24, 2023. More specifically, Luckey proposes to purchase the following assets of the Debtor (the "Sale Assets") for $400,000.00 in cash at closing:

- The Debtor's interest in the following ongoing contracts, which shall be assumed by the Debtor and assigned to Luckey:

| Counter-Party | PO # |
| --- | --- |
| ACCO Engineered Systems | 60660009 |
| Aldridge Electric | 66165417 |
| American Airlines | DFW701RA02 |
| American Airlines | JFK901RA01 |
| Berg Electric | 195261 |
| CW Aero | AS-21/182 |
| CW Aero | AS-21/419 |
| Hussung Mechanical | 21119-012 |
| JCM Associates, Inc. | 222086S04 |
| Smith & Associates | BGSE-022-001 |
| Synergy Electric | 1683-02 |
| Van Ert Electric | F5362-AS |

- Any and all accounts receivable owing to the Debtor for goods and/or services supplied by the Debtor pursuant to the foregoing contracts; and

- Any and all of the Debtor's intellectual property.[1]

13. A complete copy of the Asset Purchase Agreement (the "APA") executed by the Debtor and Luckey is attached as Exhibit A and is incorporated herein by reference.

---

[1] The referenced IP includes all intellectual property of every kind and nature, including, without limitation, all designs, engineering, schematics, customer files, material records, databases, proprietary rights, permits, registrations, licenses, know-how, formulae, proprietary processes, trade secrets, patents, trademarks, trade names, marketing plans, advertising materials, customer lists, purchase orders and agreements with customers, websites, domain names, domain registrations, e-mail addresses, passwords, programs and software of any kind, and source code.

14. The Debtor will test the proposed sale in the marketplace by affording interested parties the opportunity to submit higher and better cash offers for the Sale Assets at the hearing in this matter. Any such bidders will be expected to provide proof at the hearing of their ability to immediately pay the final purchase price into the trust account of the Debtor's counsel pending closing, without any financing or other contingency.

15. In addition to providing notice of this motion to creditors, the Debtor and its professionals will give notice of the opportunity to submit higher and better offers to the Potential Purchasers referenced above.

16. The Debtor submits that legitimate secured creditors are entitled to credit bid with respect to the collateral securing their claims, to the extent such collateral comprises part of the Sale Assets.

17. The Debtor believes that the proposed sale and overbid process described above offer the best opportunity for the Debtor to maximize the value of the Sale Assets for the benefit of its estate following reasonable and appropriate marketing efforts. Therefore, the relief sought herein is in the best interests of the estate and should be granted.

### III.  RELIEF REQUESTED

18. The Debtor requests that the Court conduct a hearing on this motion contemporaneously with the hearing on confirmation of its Plan. The Debtor further requests that, after considering any higher and better cash offers as may be submitted at such hearing, that the Court approve the sale of the Sale Assets on the terms set forth in the APA. The Debtor also requests that the resulting order include a waiver of any stay that would otherwise be applicable to the immediate effectiveness thereof pursuant to Bankruptcy Rule 6004(h).

## IV.  ARGUMENT

**A.  The Asset Sale is Authorized Under Section 1123 of the Bankruptcy Code**

19. Section 1123 of the Bankruptcy Code regulates the contents of a Chapter 11 plan. 11 U.S.C. § 1123.  It sets forth both mandatory and permissive plan provisions.

20. In relevant part, section 1123(a) directs that a plan must "provide adequate means for the plan's implementation." 11 U.S.C. § 1123(a)(5).  One statutory means for implementing a reorganization plan is by selling "all or any part of the property of the estate, either subject to or free of any lien, or the distribution of all of any part of the property of the estate among those having an interest in such property of the estate." 11 U.S.C. § 1123(a)(5)(D).  A plan can call for such a sale, "[n]otwithstanding any otherwise applicable nonbankruptcy law[.]" *Id.*

21. Section 1123(b) catalogues permissive provisions that "may" be contained in a reorganization plan. 11 U.S.C. § 1123(b).  In particular, section 1123(b)(4), which supplements section 1123(a)(5)(D), states that a plan may "provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests." 11 U.S.C. § 1123(b)(4).

22. Sales under section 1123 can be effectuated only under a Chapter 11 plan. Accordingly, a debtor seeking to sell assets pursuant to section 1123 must do so in conjunction with confirmation of its plan.  *See In re Ditech Holding Corp.*, 606 B.R. 544, 579-80 (Bankr. S.D.N.Y. 2019) (comparing asset sales under sections 363 and 1123).

23. The Debtor has invoked the sale process contemplated by section 1123 in this case.  The Plan incorporates the proposed sale and provides for distribution of the sale proceeds to the creditors with interests in the Sale Assets.  Further, the sale is timed to run co-extensively with the confirmation process.

24. If the Debtor must pursue non-consensual confirmation under section 1191(b) of the Bankruptcy Code, the proposed sale also complies with the "fair and equitable" requirements mandated by that provision. When "cramdown" is invoked under section 1191(b), the Sub-Chapter V debtor must comply with the familiar test of section 1129(b)(2)(A) to establish the plan is fair and equitable. 11 U.SC. § 1191(b)-(c).

25. Among the permissible, fair and equitable treatments set forth in section 1129(b)(2)(A), sub-part (ii) allows the sale of encumbered property free and clear of liens (with such liens attaching to the proceeds) through a Chapter 11 plan, "subject to the provisions of section 363(k)." 11 U.S.C. § 1129(b)(2)(A)(ii). Section 363(k) of the Bankruptcy Code, in turn, requires that a lienholder be permitted to credit bid its debt in a sale of its collateral – unless the court orders otherwise "for cause." 11 U.S.C. § 363(k). *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 644 (2012); *In re CHL, LLC*, 2018 Bankr. LEXIS 1758, *11-12 (Bankr. E.D.N.C. June 14, 2018) (discussing credit-bidding requirement in plan sales).

26. As stated above, the Debtor does not contest that secured creditors wishing to submit an overbid for the Sale Assets may credit bid on their collateral under section 363(k).

27. Accordingly, the proposed sale and overbid procedure is authorized pursuant to the applicable sections of Chapter 11 and should be approved.

**B. The Asset Sale is in the Best Interests of the Estate**

28. Selling the Sale Assets to Luckey (or to a qualified overbidder) as set forth herein will produce the maximum benefit for creditors in this case. The proposed sale to an industry participant with the means to complete the acquired contracts, together with collections on the Debtor's other accounts receivable (which are excluded from the Sale Assets), will provide a greater recovery for creditors than a distressed liquidation of the same property.

29. The proposed sale will promote bidding from seriously interested parties and will identify the highest and best offer(s) available for the Sale Assets. The proposed overbid procedure will allow the Court to conduct the sale in a controlled, fair and open manner, encouraging participation by financially capable bidders who demonstrate the ability to close.

30. Were this case converted to Chapter 7, the Debtor anticipates that its secured creditors would move for relief from the automatic stay to foreclose on their collateral, which would simultaneously increase the recovery costs to these claimants and decrease the value of the Sale Assets. The Debtor is also informed that its lenders would not consent to a trustee's use of their cash collateral to pay the administrative expenses of a Chapter 7 case.

31. Conversion of the case would further lead to depressed values for the Sale Assets associated with a forced liquidation, as well as additional obligations arising from rejection of the Debtor's contracts. Under those circumstances, there would be less money available to satisfy secured claims, and distributions to unsecured creditors (if any) would be significantly diluted by increased deficiency claims, rejection damages, and resulting bonding liabilities.

32. Based on the foregoing, the Debtor submits that the proposed sale offers substantially greater benefit for creditors than a forced liquidation and is the best means to maximize the value of its estate.

## V. CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court approve the sale proposed in this motion after considering any higher and better cash offers as may be submitted at the hearing in this matter, waive the stay otherwise applicable under Bankruptcy Rule 6004(h), and grant such other relief as is just and proper.

Dated: Charlotte, North Carolina
         May 1, 2023

                                      **MOON WRIGHT & HOUSTON, PLLC**

                                      */s/ Richard S. Wright*
                              Richard S. Wright (NC Bar No. 24622)
                              212 North McDowell Street, Suite 200
                              Charlotte, North Carolina 28204
                              Telephone:  (704) 944-6560
                              Facsimile:   (704) 944-0830
                              *Counsel for the Debtor*