# Exhibit A

# ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (the "Agreement") is made as of the 28th day of April, 2023 (the "Effective Date"), by and between B GSE Group, LLC, a North Carolina limited liability company (the "Seller"), and Luckey Enterprises, LLC, a North Carolina limited liability company (the "Purchaser"), or its assigns.

## RECITALS

WHEREAS, the Seller filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code on January 6, 2023 (the "Bankruptcy Case") in the United States Bankruptcy Court for the Western District of North Carolina (the "Bankruptcy Court"); and

WHEREAS, the Purchaser desires to purchase certain assets of the Seller, and the Seller desires to sell the same, upon the terms and conditions hereinafter provided.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements hereinafter set forth, the parties hereto agree as follows:

## ARTICLE I
### (Sale of the Assets; Purchase Price)

A.  Subject to the terms and conditions of this Agreement, and effective at the Closing (as hereinafter defined), the Seller hereby agrees to sell, assign and convey the Purchased Assets (as hereinafter defined) to the Purchaser, and the Purchaser hereby agrees to purchase, acquire and accept the Purchased Assets from the Seller.  The Purchased Assets shall be transferred free and clear of all liens, claims, encumbrances, and interests to the maximum extent permitted by 11 U.S.C. §§ 363 and/or 1123.

B.  The "Purchased Assets" shall consist of the following:

- The Seller's interest in the following ongoing contracts (the "Contracts"), which shall be assumed by the Seller and assigned to the Purchaser:

| Counter-Party | PO # |
|---|---|
| JCM Associates, Inc. | 222086S04 |
| Smith & Associates | BGSE-022-001 |
| Synergy Electric | 1683-02 |
| CW Aero | AS-21/182 |
| CW Aero | AS-21/419 |
| Aldridge Electric | 66165417 |
| Van Ert Electric | F5362-AS |
| Hussung Mechanical | 21119-012 |
| American Airlines | DFW701RA02 |
| American Airlines | JFK901RA01 |
| Berg Electric | 195261 |
| ACCO | 60660009 |

MWH: 10782.001; 00028453.4          -1-

- Any and all accounts receivable of the Seller for goods and/or services supplied by the Seller pursuant to the Contracts; and

- Any and all of the Seller's intellectual property (the "IP").[1]

C. The Purchased Assets shall <u>not</u> include the following, which are excepted and excluded from the transaction(s) contemplated herein (the "Excluded Assets"): all other assets of the Seller not explicitly set forth in Art. I.B. above, whether tangible or intangible, and including, but not limited to, all cash, cash equivalents, bank accounts and deposits therein, refunds, escrows, litigation claims (including, without limitation, all avoidance actions or other rights under Chapter 5 of the United States Bankruptcy Code), and all proceeds of the foregoing Excluded Assets.

D. Subject to the terms and conditions of this Agreement, the Purchaser shall pay the Seller the purchase price of Four Hundred Thousand 00/100 Dollars ($400,000.00) (the "Purchase Price") for the Purchased Assets, payable as described below.

E. The Purchase Price shall be paid in cash to the Seller at Closing (as hereinafter defined). The Purchase Price shall be deposited at Closing by wire transfer into the trust account of the Seller's counsel, Moon Wright & Houston, PLLC, or as otherwise provided in the Approval Order.

## ARTICLE II
### (Closing; Pre-Closing Deposit of Full Purchase Price; Liabilities)

A. The closing of the transaction contemplated in this Agreement (the "Closing") shall occur within twenty-one (21) days after the entry of the Approval Order (the "Closing Date"), unless otherwise ordered by the Bankruptcy Court.

B. Prior to May 11, 2023, JCM Associates, Inc. ("JCM") shall deposit the full Purchase Price, or cause the same to be deposited, into the trust account of Robbins Law Group, PLLC, 1100 N. Glebe Road, Suite 1010, Arlington, Virginia, where it shall be held pending the Closing on the Purchaser's behalf (the "Deposit"). JCM shall provide documentation of such deposit to the Purchaser and to the Seller. In the event that this Agreement is terminated for any reason and/or the Purchaser does not close on the contemplated sale, the Deposit shall be returned promptly to JCM.

---

[1] The referenced IP includes all intellectual property of every kind and nature, including, without limitation, all designs, engineering, schematics, customer files, material records, databases, proprietary rights, permits, registrations, licenses, know-how, formulae, proprietary processes, trade secrets, patents, trademarks, trade names, marketing plans, advertising materials, customer lists, purchase orders and agreements with customers, websites, domain names, domain registrations, e-mail addresses, passwords, programs and software of any kind, and source code.

C. Upon occurrence of the Closing, the Deposit shall be paid to the bankruptcy estate of the Seller in satisfaction of the Purchase Price in accordance with applicable laws, rules and regulations and any order or directive of the Bankruptcy Court in the Bankruptcy Case.

D. Delivery of the Purchased Assets shall be made by the Seller to the Purchaser at the Closing by delivering such bills of sale, assignments and other instruments of conveyance and transfer as are necessary to vest in the Purchaser title to, and the right to full custody and control of, the Purchased Assets in accordance with the provisions of this Agreement and any order(s) of the Bankruptcy Court approving the transactions contemplated herein. At Closing, the Seller shall surrender possession of the Purchased Assets to the Purchaser, and the Purchaser shall assume possession of same.

E. Any liens for *ad valorem* or similar taxes related to, imposed upon or assessed directly against the Purchased Assets shall attach only to the proceeds of sale with the same priority, validity, force, and effect as they existed with respect to the Purchased Assets on the Closing Date. For the avoidance of doubt, the Purchaser shall only be responsible for such liabilities imposed upon or assessed directly against the Purchased Assets from and after the Closing Date.

F. After the Closing, the Purchaser may, in its sole discretion, elect to pay any other cost or expense incurred by the Seller prior to Closing but unpaid as of the Closing. However, the Purchaser shall not be entitled to assert a claim of any kind against the Seller's bankruptcy estate with respect to such costs or expenses, and the Purchaser expressly waives the same.

G. Notwithstanding anything herein to the contrary, the Purchaser and the Seller agree to use their reasonable best efforts to obtain the benefits of § 1146(a) of the Bankruptcy Code with respect to the exemption from stamp taxes or similar taxes in respect of the purchase and sale of the Purchased Assets hereunder. Each party shall be responsible for its own attorneys' fees and costs.

H. Neither party shall have any obligation to pay any brokerage, finders or similar fee or other compensation to any person, firm or other corporation that a party hereunder may have dealt with, and the parties each agree to indemnify and hold the other harmless from any such fees or compensation.

## ARTICLE III
## (Seller's Representations)

The Seller hereby represents, warrants, and covenants that:

A. Subject to the jurisdiction of the Bankruptcy Court, the Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the State of North Carolina, and has the full corporate power and authority to own the Purchased Assets.

B. This Agreement constitutes a valid and legally binding obligation of the Sellers, enforceable against the Sellers in accordance with its terms.

C. Neither the execution and delivery of this Agreement, nor the consummation of the transactions contemplated herein, will violate any provision of the articles of incorporation or operating agreements of the Seller or any law, rule, regulation, writ, judgment, injunction,

decree, determination, award or other order of any court, government, or governmental agency or instrumentality, or, conflict with or result in any breach of any of the terms of or the creation or imposition of any mortgage, deed of trust, pledge, lien, security interest or other charge or encumbrance of any nature pursuant to the terms of any material contract or agreement to which the Seller is a party or by which the Seller or any of the Purchased Assets are bound.

D. At Closing and pursuant to the Approval Order (as hereinafter defined), the Seller shall convey to the Purchaser at closing good and marketable title to all of the Purchased Assets free and clear of all liens, claims, interests, and encumbrances pursuant to sections 363 and/or 1123 of the Bankruptcy Code.

E. The Purchaser shall assume no obligations of the Seller except as set forth herein.

F. The Seller shall cooperate in any and all efforts or actions necessary to ensure the orderly conveyance and transition of the Purchased Assets to the Purchaser, whether before, at or after the Closing.

G. With respect to that contract between JCM and the Seller (PO# 222086S04), the assumption of the contract includes but is not limited to the Debtor's accounts receivable for services furnished under the contract. Moreover, for the avoidance of doubt, related to the Purchaser's subsequent obligations to perform under said contract, the Purchaser is obtaining all of the Seller's designs, engineering, schematics, customer files, material records, databases, and proprietary rights (express or implied) as being necessary (inferable or implied) to properly and fully complete the Seller's scope of work under the contract and any work incidental thereto. The Purchaser grants JCM a security interest in the assets described in this Article III.G. Further, except as may be between JCM and the Purchaser, the Purchaser shall buy the Purchased Assets free and clear of any and all pledges, claims, threats, liens, restrictions, agreements, leases, security interests, charges and encumbrances of any kind. The Purchaser shall have the sole right and discretion to deal with any contract adjustment(s) related to the Seller's accounts receivable to JCM and any subsequent price deduction to take into account JCM's $400,000.00 financing of the transaction(s) contemplated in this Agreement.

## ARTICLE IV
### (Purchaser's Representations)

The Purchaser hereby represents, warrants, and covenants that:

A. The Purchaser is a limited liability company duly organized, validly existing and in good standing under the laws of the State of North Carolina, and has the full power and authority to acquire the Purchased Assets.

B. The execution and delivery of this Agreement by the Purchaser, the performance by the Purchaser of its covenants and agreements hereunder and the consummation by Purchaser of the transactions contemplated herein have been duly authorized by all necessary corporate action. When executed and delivered by the Purchaser, this Agreement will constitute the valid and legally binding obligation of the Purchaser enforceable against the Purchaser in accordance with its terms.

      C.     Neither the execution and delivery of this Agreement, nor the consummation of the transactions contemplated herein, will violate any provision of the articles of organization and operating agreement of the Purchaser or any law, rule, regulation, writ, judgment, injunction, decree, determination, award, or other order of any court, government or governmental agency or instrumentality, or conflict with or result in any breach of any of the terms of or constitute a default under or result in the termination of or the creation or imposition of any mortgage, deed of trust, pledge, lien, security interest or other charge or encumbrance of any nature pursuant to the terms of any contract or agreement to which the Purchaser is a party or by which Purchaser or any of the Purchased Assets is bound.

      D.     The Purchaser (i) knows, and has examined, inspected and investigated the Purchased Assets to the full satisfaction of the Purchaser, without reliance on any statements or representations of the Seller other than as set forth in this Agreement, and (ii) has independently investigated, analyzed and appraised the value of the Purchased Assets. The Purchaser acknowledges that, except as specifically set forth in this Agreement, neither the Seller nor any broker, agent, employee, servant or representative of the Seller has made any representations whatsoever regarding the subject matter of the transactions contemplated hereunder, and the Purchaser agrees to purchase the Purchased Assets "as is" and "where is," ***without warranty (whether express or implied) as to merchantability, fitness for a particular purpose, or otherwise. Further, the Seller hereby disclaims any warranty, expressed or implied, of merchantability or fitness for any particular purpose as to any portion of the Purchased Assets.***

## ARTICLE V
### (Closing Conditions)

      A.     Conditions to Obligations of Purchaser.

The obligations of the Purchaser under this Agreement are subject to the fulfillment of the following conditions precedent, each of which may be waived in writing in the sole discretion of the Purchaser (unless other specified, these conditions must be fulfilled on or before the Closing Date):

    (i)    <u>Bankruptcy Court Approval</u>. The transactions involving the Seller contemplated by this Agreement shall be approved by the Bankruptcy Court and the Approval Order (as hereinafter defined) shall be in full force and effect and shall not have been stayed by the Bankruptcy Court or any court of competent jurisdiction.

    (ii)   <u>Continued Truth of Representations and Warranties of the Seller; Compliance with Covenants and Obligations.</u> The representations and warranties of the Seller contained in this Agreement shall be true and correct in all material respects on and as of the Closing Date as though such representations and warranties were made on and as of such date, except for any changes permitted by the terms hereof or consented to in writing by the Purchaser and the Purchaser shall have received from the Seller a certificate to such effect if requested. The Seller shall have performed and complied with all terms, conditions, covenants, obligations, agreements and restrictions required by this Agreement to be performed or complied with by it prior to or at the Closing Date.

  (iii) <u>Corporate/Partnership Proceedings.</u> All corporate, partnership and other proceedings required to be taken on the part of the Seller to authorize or carry out this Agreement and to convey, assign, transfer and deliver the Purchased Assets pursuant hereto shall have been taken.

  (iv) <u>No Material Adverse Change.</u> No Purchased Assets shall have been stolen or damaged or destroyed by fire, storm or other casualty and there shall have occurred no event(s) having a material adverse effect on the Purchased Assets. The Seller will not permit any new encumbrance or increase in any encumbrance beyond those already disclosed to Purchaser and will not diminish or allow any reduction in value of the Purchased Assets.

  (v) <u>Closing Deliverables.</u> The Purchaser shall have received at or prior to the Closing Date each of the following documents:

   a. copies of the Approval Order entered by the Bankruptcy Court, in form and substance reasonably acceptable to the Purchaser and its counsel;

   b. a bill of sale and/or assignment agreement and other documents necessary to transfer good and valid title to the Purchased Assets, executed and acknowledged by the Seller, in the form reasonably acceptable to the Purchaser, with respect to the Purchased Assets;

   c. such instruments of conveyance, assignment and transfer, in form and substance reasonably satisfactory to the Purchaser, as shall be appropriate to convey, transfer and assign to, and to vest in, the Purchaser, good, clear record and marketable, insurable title to the Purchased Assets;

   d. such contracts, files and other data and documents pertaining to the Purchased Assets as the Purchaser may reasonably request;

   e. possession of all of the Purchased Assets including, but not limited to, all computer, software and/or document access codes; and

   f. such other documents, instruments or certificates as the Purchaser may reasonably request to effectuate the transactions contemplated in this Agreement.

  B. The Seller hereby covenants and agrees that, except as consented to by the Purchaser, from and after the date of this Agreement and until the Closing, Seller shall not mortgage, pledge, or subject to any lien, charge or encumbrance of any of the Purchased Assets, except as may be ordered otherwise by the Bankruptcy Court, and in such event, upon express acceptance and approval by the Purchaser of any such court-ordered lien, charge or encumbrance.

C. The terms of this Agreement and consummation of the transactions hereunder are subject to entry by the Bankruptcy Court of a final order approving the same in the Bankruptcy Case (the "Approval Order").

## ARTICLE VI
### (Miscellaneous)

A. All notices, requests or instructions hereunder shall be in writing and sent by registered or certified mail, postage prepaid, as follows: (i) if to the Sellers, Moon Wright & Houston, PLLC, Attention Richard S. Wright, 212 North McDowell Street, Suite 200, Charlotte, North Carolina 28204, and (ii) if to the Purchaser, Luckey Enterprises, LLC, Attention Bryan Bullerdick, 14034 Clarendon Point Court, Huntersville, North Carolina 28078, with a copy to Seth A. Robbins, Robbins Law Group, PLLC, 1100 N. Glebe Road, Suite 1010, Arlington, VA 22201.  Any of the above addresses may be changed at any time by notice given as provided above; provided, however, that any such notice of change of address shall be effective only upon receipt.

B. This Agreement contains the entire agreement between the parties hereto with respect to the transactions contemplated hereby, and no modification hereof shall be effective unless in writing and signed by the party against which it is sought to be enforced.

C. Each of the parties hereto shall use such party's best efforts to take such actions as may be necessary or reasonably requested by the other parties hereto to consummate the transactions contemplated by this Agreement.

D. Any and all disputes concerning the interpretation, consummation, and/or enforcement of this Agreement shall be in the exclusive jurisdiction of the Bankruptcy Court.

E. The parties hereto shall bear such party's own expenses in connection with this Agreement and the transactions contemplated hereby.

F. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, assigns and legal representatives.  The Purchaser may assign its rights and obligations under this Agreement to an affiliate or affiliates of the Purchaser to take title to the Purchased Assets at closing.

G. This Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina, without regard to North Carolina's conflict of laws principles.

H. If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement.

I. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

[Signature Page Follows]

IN WITNESS WHEREOF, this Agreement has been duly executed by the parties hereto as of the date first above written.

**PURCHASER:**

Luckey Enterprises, LLC

By: _____
    Bryan M. Bullerdick
    Member-Manager


**SELLER:**

B GSE Group, LLC

By: _____
    Bryan M. Bullerdick
    Member-Manager