

FILED & JUDGMENT ENTERED
Steven T. Salata

June  6  2023

Clerk, U.S. Bankruptcy Court
Western District of North Carolina



J. Craig Whitley
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **B GSE GROUP, LLC,** | ) | Case No. 23-30013 |
| | ) | |
| Debtor. | ) | |

## ORDER APPROVING ASSET SALE

This cause came before the Court on May 23, 2023 for a continued hearing on the *Motion for Approval of Asset Sale* (the "Sale Motion") [Doc. 172] filed by debtor B GSE Group, LLC (the "Debtor"). Blake Boyette, Esq. appeared for DMKA LLC d/b/a The Smarter Merchant; Patti W. Halloran, Esq. appeared on behalf of the Jacksonville Aviation Authority; Cole Hayes, Esq. appeared as Subchapter V Trustee; Ellen Arvin Kennedy, Esq. and Tyler J. Mitchell, Esq. appeared for Queen City Supply Co., Bryan S. Henry, Tammy Henry, Nova 1 Properties, LLC, and Industrial Maintenance Solutions, LLC (collectively, the "IMS Parties"); James S. Livermon, III, Esq. appeared for Truist Bank ("Truist"); Jeffrey S. Price, Esq. appeared for Philadelphia Indemnity Insurance Company ("Philadelphia Indemnity); Glenn C. Thompson, Esq. appeared for John Bean Technologies Corporation ("JBT"); Andrew Vanore, III, Esq. appeared for Cincinnati Insurance Company; Julia Wood, Esq. appeared for the U.S. Small Business Administration (the "SBA"); Richard S. Wright, Esq. appeared for the Debtor; and

MWH: 10782.001; 00028590.2

Shelley K. Abel, Esq. appeared as the United States Bankruptcy Administrator for the Western District of North Carolina.  Based upon a review of the record, the evidence presented, and the arguments of counsel, the Court makes the following:

## FINDINGS OF FACT

1.      The Debtor is a North Carolina limited liability company that manufactures ground support equipment for commercial and military aircraft.  The Debtor operates from a principal office in Huntersville, North Carolina, with leased fabrication and assembly plants in Morgantown, West Virginia.  Bryan Bullerdick is the Debtor's sole owner.

2.      The Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the United States Bankruptcy Code in this Court on January 6, 2023.

3.      GreerWalker LLP ("GreerWalker") serves as the Court-appointed financial advisor to the Debtor.  Cole Hayes, Esq. is the Subchapter V trustee.

4.      Truist holds a first priority lien on the Debtor's accounts and general intangibles, and a second priority lien on all other assets.  After the post-petition liquidation of certain non-Debtor collateral, the Debtor is indebted to Truist in the amount of approximately $490,000.00 pursuant to a revolving line of credit and a term equipment loan.

5.      The SBA also holds a blanket lien on the Debtor's personal property (junior only to Truist with respect to accounts and general intangibles), securing an indebtedness of approximately $530,000.00.

6.      Other creditors, such as DMKA LLC d/b/a The Smarter Merchant, assert junior security interests against the Debtor's personal property.  The Debtor disputes the validity of any such claims.  The Debtor also scheduled trade payables and other unsecured claims of $4,409,428.65 (excluding unsecured deficiency claims).

7.      The Debtor previously filed its *Plan of Reorganization* (the "Initial Plan"), classifying claims against the estate and describing how the Debtor proposed to satisfy them. The Initial Plan provided that the Debtor would market and sell its assets as a going concern pursuant to sections 1123(a)(5) and (b)(4) of the Bankruptcy Code. The resulting proceeds were to be distributed to the estate's creditors in their order of priority.

8.      Various parties objected to the Initial Plan. However, the Debtor's marketing effort proved unsuccessful. While numerous potential purchasers conducted due diligence with respect to the Debtor and its assets, no offers were ultimately received.[1]

9.      Luckey Enterprises, LLC ("Luckey"), which is owned in part by Mr. Bullerdick, then offered to purchase certain assets of the Debtor for the cash sum of $400,000, subject to higher and better offers. The specific assets that Luckey proposed to buy were:

(a)      The Debtor's interest in the following contracts, to be assumed by the Debtor and assigned to Luckey:

| Counter-Party | PO # |
|---|---|
| ACCO Engineered Systems | 60660009 |
| Aldridge Electric | 66165417 |
| American Airlines | DFW701RA02 |
| American Airlines | JFK901RA01 |
| Berg Electric | 195261 |
| CW Aero | AS-21/182 |
| CW Aero | AS-21/419 |
| Hussung Mechanical | 21119-012 |
| JCM Associates, Inc. | 222086S04 |
| Smith & Associates | BGSE-022-001 |
| Synergy Electric | 1683-02 |
| Van Ert Electric | F5362-AS |

---

[1] On or about May 22, 2023, the IMS Parties presented a letter of intent to the trustee, in which they proposed to restructure the proposed sale as a transaction under section 363 of the Bankruptcy Code rather than a sale under section 1123. Their proposal involved acquiring Truist's lien position, assuming the Debtor's obligations to the SBA, and credit bidding for all assets of the Debtor. The trustee rejected this concept inasmuch as it included property other than the Offered Assets, yielded no cash to the estate, and was inconsistent with the Plan and the Sale Motion. Further, Truist informed the Court that the IMS Parties had not met a payment deadline set by the bank in order to purchase its lien position. The parties then proceeded with the hearing on the Sale Motion as filed. As described in ¶ 21 below, the IMS Parties declined to make a higher bid for the Offered Assets.

(b)     Any and all accounts receivable owing to the Debtor for goods and/or services supplied by the Debtor pursuant to the foregoing contracts (the "Receivables"); and

(c)     Any and all of the Debtor's intellectual property (the "IP").[2]

10.     The Debtor filed its *Motion for Approval of Asset Sale* (the "Sale Motion") [Doc. 172] with respect to Luckey's offer and a related *Motion to Assume and Assign Executory Contracts* (the "Assumption Motion") [Doc. 174] on May 1, 2023.

11.     A complete copy of the Asset Purchase Agreement (the "APA") executed by the Debtor and Luckey is attached as <u>Exhibit A</u> to the Sale Motion.

12.     The Debtor also filed its *First Amended Plan of Reorganization* (the "Amended Plan") [Doc. 210].  The transaction proposed in the Sale Motion operates in conjunction with the Amended Plan.

13.     The Amended Plan addressed many of the issues raised in the objections to the Initial Plan.  Its modified structure also accommodated the sale of the aforementioned assets to Luckey or an overbidder, and proposed a separate mechanism to sell the Debtor's tangible property by public auction to which Truist and the SBA consented.

14.     Various parties also objected to the Sale Motion, including the trustee [Doc. 183], the Bankruptcy Administrator [Doc. 185], the IMS Parties [Docs. 202, 218], JBT [Doc. 205], and Philadelphia Indemnity [Doc. 209].

15.     Certain of the contracts to be assumed and assigned pursuant to the Assumption Motion, which were bonded by Philadelphia Indemnity, were subsequently excluded from the

---

[2] The referenced IP includes all intellectual property of every kind and nature owned by the Debtor, including, without limitation, all designs, engineering, schematics, customer files, material records, databases, proprietary rights, permits, registrations, licenses, know-how, formulae, proprietary processes, trade secrets, patents, trademarks, trade names, marketing plans, advertising materials, customer lists, purchase orders and agreements with customers, websites, domain names, domain registrations, e-mail addresses, passwords, programs and software of any kind, and source code.

proposed transaction upon the agreement of Philadelphia Indemnity, ACCO Engineered Systems, Inc., American Airlines, and the trustee. *See Consent Order Regarding Certain Bonded Contracts* (the "Consent Order") [Doc. 243]. The excluded contracts are:[3]

**Contracts Excluded by Consent**

| Counterparty | PO/Contract Number | Bond Number |
|---|---|---|
| ACCO Engineered Systems | 60660009 | PB02152800126 |
| American Airlines | DFW701RA02 | PB02152800127 |
| American Airlines | JFK901RA01 | PB02152800131 |
| Berg Electric | 198887 | PB02152800145 |

16.     The remaining contracts to be assumed and assigned pursuant to the Assumption Motion (the "Contracts") therefore are:[4]

**Remaining Contracts to be Assumed and Assigned as Part of Sale**

| Counterparty | PO/Contract Number |
|---|---|
| Aldridge Electric | 66165417 |
| Berg Electric | 195261 |
| CW Aero | AS-21/182 |
| CW Aero | AS-21/419 |
| Hussung Mechanical | 21119-012 |
| JCM Associates, Inc. | 222086S04 |
| Smith & Associates | BGSE-022-001 |
| Synergy Electric | 1683-02 |
| Van Ert Electric | F5362-AS |

17.     Luckey did not object to excluding the specified contracts, nor revise its offered price for the remaining assets.

18.     Nevertheless, since the proposed sale was to an affiliate owned and operated by an insider, the Court concluded it could not defer to the Debtor's business judgment that the

---

[3] The Debtor did not list Contract Number 198887 in the Sale Motion or in the Assumption Motion as an asset to be transferred to the purchaser. Nevertheless, it was included in the Consent Order to address Philadelphia Indemnity's objection to the assumption and assignment of *any* contract for which it had issued bonds.

[4] The Receivables, the IP, and the Contracts are collectively referred to as the "Offered Assets."

transaction was in the best interests of the estate.  The Court declined to approve the Sale Motion

at the May 11, 2023 hearings and continued the proceedings to a later date.[5]

19.      In response, the Debtor consented to cease being a debtor in possession such that

Cole Hayes, the Subchapter V trustee, commenced service as a full-powers trustee under section

1183(b)(5) of the Bankruptcy Code.  *See Order (I) Removing Debtor in Possession and (II)*

*Continuing Hearing on Various Motions* [Doc. 242].

20.      The trustee then independently considered the merits of not only the Sale Motion

and the Assumption Motion, but also of the Amended Plan.  Since the IMS Parties expressed

interest in offering a higher bid at the previously scheduled hearing, the trustee also afforded

them access to the same due diligence materials provided to other potential purchasers and

agreed to entertain a potentially greater offer for the Offered Assets.

21.      However, at the continued hearing on May 23, 2023, the IMS Parties declined to

make a higher bid than that offered by Luckey.[6]

22.      The trustee testified regarding (a) his review of the efforts of the Debtor and

GreerWalker to market and sell the company's assets as a going concern, (b) his consideration of

Luckey's offer, (c) his review of the Debtor's records and due diligence materials, (d) his

communications  with  GreerWalker,  Mr.  Bullerdick,  Luckey's  financier,  the  contract

---

[5] The underlying hearings were first continued to May 16, 2023.  The parties determined at that point that additional time was necessary for the IMS Parties to conduct continued due diligence and to consider a higher offer for the Debtor's assets offered for sale.  The matters were therefore continued again to May 23, 2023.

[6] The IMS Parties did make an overbid at first (separate and apart from the letter of intent referenced in footnote 1, above), which led to a series of back-and-forth bids between Luckey and the IMS Parties in open Court.  However, it became apparent during this process that the IMS Parties did not intend to take assignment of all the contracts implicated in the Sale Motion.  Rather, the IMS Parties wished to retain the right to decline assumption and assignment of the contracts, meaning the estate would be forced to reject them. This, in turn, would increase the amount of unsecured claims against the estate.  Assumption and assignment of the contracts at issue formed part of the consideration supporting Luckey's offer.   Finding the IMS Parties' understanding of the sale terms inconsistent with the Sale Motion and the Assumption Motion, the Court struck the existing bids and started over.  The IMS Parties then declined to make an offer over and above that of Luckey.

counterparties, and other parties in interest, (e) the Debtor's cessation of business during the bankruptcy case; and (f) the lack of any other offers providing comparable benefits to creditors.

23.    The trustee concluded, in the exercise of his independent business judgment, that the sale to Luckey, including assumption and assignment of the Contracts, was negotiated in good faith and is in the best interests of the bankruptcy estate.

24.    All parties other than the IMS Parties withdrew their objections to the Sale Motion. The IMS Parties object to the sale due to their assertion that they may own or hold an interest in certain IP in the Debtor's possession, and because they question the business judgment of the Debtor in selling assets to a corporate insider of the Debtor.

25.    In separate orders entered contemporaneously herewith, the Court has granted the Assumption Motion and confirmed the Amended Plan.

### CONCLUSIONS OF LAW

26.    The Sale Motion is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (O).

27.    Due and proper notice of the Sale Motion, the related hearings, and the sale itself was provided to all interested parties.

28.    The Offered Assets are property of the Debtor's bankruptcy estate and the Debtor has authority to convey the same pursuant to the terms of this Order.

29.    The APA was negotiated in good faith, and its terms (as modified in ¶¶ 15-16 above) were material inducements for the Debtor and Luckey to enter into the same.

30.    The marketing of the Debtor's property and the sale of the Offered Assets were all conducted and/or proposed by the Debtor and its appointed professionals in good faith with the goal of maximizing the value of the estate for the benefit of creditors.

31.     The sale of the Offered Assets as authorized herein represents an exercise of the sound business judgment of the Debtor and its trustee, and will confer actual and substantial benefits upon the bankruptcy estate.

32.     The consideration to be paid by Luckey for the Offered Assets is fair and reasonable, is the highest and best offer received for the Offered Assets, and will provide a greater recovery for the Debtor's creditors than any other practical alternative available.  The purchase price to be paid by Luckey constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and applicable non-bankruptcy law.

33.     The purchase of the Offered Assets by Luckey does not amount to a consolidation, merger, or de facto merger of Luckey and the Debtor.

34.     The sale of the Offered Assets is free and clear of all liens, claims, interests, and encumbrances (with the same attaching to the proceeds), but the Debtor is also selling the Offered Assets without warranty.  Accordingly, the sale free and clear encompasses only property owned by the Debtor.

35.     With respect to any concerns raised over the sale of the Offered Assets to an affiliate, the Court agrees with the trustee that the contemplated transactions were entered into in good faith, without collusion, and are in the best interest of the estate.

36.     Entry of this Order is in the best interests of all affected parties.

**THEREFORE, IT IS ORDERED, ADJUDGED and DECREED that:**

A.     The Sale Motion is granted;

B.     All objections to the Sale Motion not resolved in the Consent Order or otherwise withdrawn are overruled;

C.      The sale of the Offered Assets to Luckey for the purchase price of $400,000 is approved, and the Debtor is authorized to execute and deliver all documents necessary or reasonably requested by Luckey to close such sale including, without limitation, a bill of sale or other appropriate instrument evidencing the purchase of the Offered Assets by Luckey;

D.      The sale of the Offered Assets as set forth herein shall be free and clear of all liens, claims, interests, and encumbrances of any kind whatsoever, provided that: (a) all such liens, claims, interests, and encumbrances shall attach to the sale proceeds to the same extent, and with the same validity and priority, that they attached to the Offered Assets; and (b) said sale is "as is," "where is," without warranty as set forth in the APA;

E.      At the closing of the approved sale, the proceeds of the Offered Assets shall be deposited into the trust account of Truist's counsel and shall be disbursed pursuant to the terms of the Amended Plan as confirmed by the Court;

F.      All parties shall cooperate with the Debtor to ensure that the Offered Assets are separated from other assets of the estate, including, but not limited to, machinery, equipment, office equipment, furnishings, computers, vehicles, and inventory, which are not included in the approved sale;

G.      The 14-day stay of Bankruptcy Rule 6004(h) is hereby waived;

H.      To the extent any findings of fact in this Order constitute conclusions of law, and *vice versa*, they are adopted as such; and

I.      The Court shall retain jurisdiction over the interpretation, implementation, and enforcement of this Order.

| | |
|---|---|
| This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of this Order. | United States Bankruptcy Court |